UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MOUNTAIN LAUREL ASSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 3:04-CV-188 (VARLAN/GUYTON) |
| BLACK HAWK TRANSPORT, LLC, GARY WAYNE BARNETT, SCOTTY GENE PIKE, and JAMES L. BENTLEY, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This declaratory judgment action was filed by plaintiff Mountain Laurel Assurance Company ("Mountain Laurel") for a determination of whether the policy of motor vehicle insurance issued to defendant Black Hawk Transport, LLC, provides coverage for the traumatic injuries suffered by defendant James L. Bentley on July 31, 2003. Mountain Laurel contends that the terms of its policy exclude coverage for Bentley's injuries. Bentley, the only defendant who has appeared in this action, argues that the Mountain Laurel insurance policy does provide coverage for his injuries.

The case is before the Court on several pending motions: plaintiff's Motion for Default Judgment [Doc. 23]; plaintiff's Motion for Summary Judgment [Doc. 26]; defendant Bentley's Motion for Summary Judgment [Doc. 32]. The Court has carefully reviewed the

pending motions, related pleadings and exhibits [Docs. 24, 25, 27, 33, 35] and considered the excellent arguments of counsel presented on June 9, 2005.

For the reasons set forth herein, the plaintiff's motion for summary judgment will be granted; defendant Bentley's motion for summary judgment will be denied; and the plaintiff's motion for default judgment will be denied as moot.

I.  **Relevant Facts**

For purposes of the pending cross-motions for summary judgment, the parties generally agree as to the relevant facts that are pertinent to the pending motions.

This case arises from a tragic accident that occurred on July 31, 2003, at a coal mine near Greasy Creek, Virginia. At all material times, defendant Gary Barnett owned and operated Black Hawk Transport, LLC ("Black Hawk"), a Kentucky corporation with a principal office in Tate Springs, Tennessee. Black Hawk is in the business of transporting mining equipment. At the time of this accident, Black Hawk owned two tractors and two trailers, including the tractor and trailer involved in this case. These vehicles were specifically listed as insured vehicles pursuant to a policy of motor vehicle liability insurance issued by plaintiff Mountain Laurel Assurance Company.

Defendant Scotty Gene Pike was employed by Black Hawk. Defendant James L. Bentley, an independent contractor, was asked to assist Pike in transporting a Caterpillar excavator from the Consolidated Coal Company in Neon, Kentucky, to a coal mine near Greasy Creek, Virginia. Bentley agreed to drive the tractor trailer with the excavator

attached and Pike drove an escort vehicle in front of the trailer. The excavator was not listed as an insured vehicle under the Mountain Laurel policy.

At the Kentucky mine, Pike loaded the excavator onto the trailer and secured it. Pike and Bentley obtained the appropriate permits and transported the excavator to the mine in Virginia. Upon their arrival, Pike was responsible for unloading the excavator from the trailer. The trailer was detached from the tractor. Pike then drove the excavator off the trailer and parked it. Pike and Bentley then attempted to re-attach the tractor and the trailer. However, the trailer's hydraulic lift failed and Pike could not reconnect the trailer to the tractor. Pike then re-started the excavator and moved it along the right side of the trailer so the excavator could be used to lift the front of the trailer to the proper height for re-attachment to the tractor. Pike attached the front of the trailer to the excavator with a chain. At this point, Bentley was standing to the left of the trailer. Using the excavator, Pike lifted the trailer and, in doing so, somehow activated one of the excavator's controls causing it to rotate. The trailer swung in Bentley's direction, striking his feet and legs. One of Bentley's feet was amputated and the other nearly severed from his leg.

**II.    Procedural History**

Mountain Laurel filed this declaratory judgment action for a determination of its rights and responsibilities with respect to providing insurance coverage for any claims arising from this accident. Defendants Black Hawk, Barnett, and Pike have never answered or appeared in this case, although the record reflects that they have been served with process [*see* Docs.

3

2, 17, 18]. On January 21, 2005, the Clerk entered default against these defendants due to their failure to answer or appear [Doc. 22]. Mountain Laurel then filed a motion for default judgment [Doc. 23] against Black Hawk, Barnett, and Pike, which Bentley has opposed. Mountain Laurel and Bentley have now filed cross motions for summary judgment regarding the ultimate issue raised by this case, whether Mountain Laurel is obligated pursuant to its policy of insurance to defend or indemnify any defendant or satisfy any judgment arising from this accident.

**III.   Policy Terms**

The record contains a complete, stipulated copy of the insurance policy at issue [Doc. 27, Ex. 1 (hereinafter "Policy")]. The Policy provides coverage for an accident arising from the "ownership, maintenance or use" of an insured auto. [Policy at p. 5.] The Policy defines an insured "auto" as "a land motor vehicle or trailer designed for travel on public roads. It does not include mobile equipment." [Policy at p. 3.] "Mobile equipment" is defined to include "bulldozers, power shovels, cranes, rollers, booms, winches, graders, diggers, mixers, compressors, generators, drills, welders, pumps, farm implements and machinery, forklifts, shredders or other similar specialized equipment." [Policy at p. 4.] Bentley concedes that the excavator constitutes "mobile equipment" as defined by the Policy. [*See* Doc. 33 at p. 9.]

The Policy lists several exclusions for which coverage and Mountain Laurel's duty to defend does not apply, including:

> 10. Bodily injury or property damage resulting from or caused by the loading or unloading of property with any device other than a hand truck.
>
> *   *   *
>
> 23. Bodily injury or property damage caused by or through the ownership, use or operation of any mobile equipment or other apparatus attached to or pulled by your insured auto except while your insured auto is in transit on a public roadway.

[Policy at pp.13, 16.]

**IV.    Motions for Summary Judgment**

    A.    <u>Standard of Review</u>

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v.*

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

  B. <u>Analysis</u>

The parties agree and this Court concurs that Tennessee law applies in this diversity case [Doc. 27 at p. 7, Doc. 33 at pp. 1-2]. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Moreover, the Policy must be construed according to Tennessee law because it was issued to and delivered to Black Hawk in Tennessee. *Burress v. Sanders*, 31 S.W.3d 259, 265 (Tenn. Ct. App. 2000).

Under Tennessee law, the interpretation of an insurance contract is a matter of law for determination by the Court. *Corrington v. Equitable Life Assurance Society of U.S.*, 265 F. Supp.2d 905, 909 (W.D. Tenn. 2003). The Court is instructed to construe insurance policies in the same manner as any other contract, *Id.*; *Alcazar v. Hayes*, 982 S.W.2d 845, 848 (Tenn. 1998), and to give effect to the parties' intentions as reflected in the written contract of

6

Case 3:04-cv-00188   Document 47   Filed 07/11/05   Page 6 of 13   PageID #: 37

insurance. *Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996). When the provisions of an insurance policy are clear and unambiguous, the Court's construction of the policy should favor neither party. *Brown v. Tennessee Auto. Ins. Co.*, 237 S.W.2d 553, 554 (Tenn. 1951); *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002). The Court is also advised to avoid artificially narrowing the policy's coverage or extending coverage beyond the policy's intended scope. *Massachusetts Mut. Life Ins. Co.*, 104 S.W.3d at 20. However, when a policy provision is susceptible to more than one construction, an ambiguity exists and the provision must be construed against the carrier and in favor of the insured and coverage. *Memphis Furniture Mfg. Co. v. American Cas. Co.*, 480 S.W.2d 531, 532-33 (Tenn. 1972).

Mountain Laurel presents three arguments as to why the Policy does not provide coverage for the accident at issue. First, Mountain Laurel contends that Bentley's injuries did not arise from the ownership, maintenance, or use of an insured auto. Second, Mountain Laurel contends that the Policy excludes injuries arising from loading or unloading activities. Third, Mountain Laurel contends that the Policy excludes injuries arising from the use of mobile equipment attached to an insured auto. Accordingly, Mountain Laurel argues that it is entitled to a declaratory judgment that Bentley's injuries are excluded from coverage.

Bentley contends that none of the cited provisions are applicable to deny coverage and that he is entitled to summary judgment. The Court will address each of these three arguments in turn.

7

1. <u>The Ownership, Maintenance or Use of an Insured Auto</u>

As noted above, the Policy provides coverage for an accident arising from the "ownership, maintenance or use" of an insured auto. [Policy at p. 5.] An "auto" is defined as "a land motor vehicle or trailer designed for travel on public roads. It does not include mobile equipment." [Policy at p. 3.] Mountain Laurel argues that the accident at issue did not arise "out of the ownership, maintenance or use" of an insured auto. Mountain Laurel notes that Bentley has admitted that Pike was not driving an insured auto at the time of the accident and that Bentley has also admitted that Pike was operating the excavator at the time of the accident. [Doc. 39 at ¶ 4.] Thus, Mountain Laurel contends that Bentley's injury arose from the use of mobile equipment that was not an insured auto. [Doc. 27.]

Bentley argues that Tenn. Code Ann. § 55-12-122(a),[1] sets forth Tennessee's public policy in favor of expansively interpreted motor vehicle insurance coverage. *See Travelers Ins. Co. v. Aetna Casualty & Surety Co.*, 491 S.W.2d 363, 365 (Tenn. 1973) ("[t]he term 'arising out of the use' in liability policies has generally been held to be a broad comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'"). Thus, the Policy language of "ownership, maintenance or use" is to be

---

[1]Tenn. Code Ann. § 55-12-122(a) provides "[a]n owner's policy of liability insurance shall designate, by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby granted; and shall insure the person named therein, and any other person using such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles with the United States ... subject to limits, exclusive of interest and costs ... ."

8

interpreted broadly and in favor of coverage. Bentley contends that Pike was "using" the insured tractor and trailer at the time he was trying to reconnect them, a task that was necessary to returning the insured vehicles to Black Hawk's place of business. Bentley argues that Pike's use of the excavator, in addition to the insured vehicles, does not alter the conclusion that his injuries "grew out of" or "flowed from" an approved use of the insured trailer. Bentley further argues that Mountain Laurel's position ignores the possibility that Pike was simultaneously "using" two pieces of equipment, the excavator and the insured trailer.

Mountain Laurel emphasizes that the "use" of the trailer must be a "proper" use. *See Travelers Ins. Co. v. Aetna Casualty & Surety Co.*, 491 S.W.2d 363, 365 (Tenn. 1973) ("[t]he term 'use', then, has been a general catch-all term construed by the courts to include all proper uses of a vehicle."). Because the Policy excludes from coverage any claim arising from the "operation of any mobile equipment or other apparatus attached to or pulled by" an insured auto [Policy at p. 16], Mountain Laurel contends that the use of the excavator to lift the trailer with a chain is not a proper use of the insured vehicle.

The Court notes that the Policy does not define the term "use" and does not identify proper or covered uses of an insured auto. Thus, the question is whether Bentley's injuries arose "out of the ... use" of the insured trailer. Bentley makes a persuasive argument that re-attachment of the insured trailer to the insured tractor is a proper and covered "use" of the trailer. If that proposition were viewed in a vacuum, the Court would likely agree. However, the accident was the result of the "use" of the excavator to facilitate the re-attachment of the

9

tractor and trailer. It was Pike's operation of the excavator that caused the trailer to swing out and strike Bentley. As counsel for Mountain Laurel suggested at oral argument, it is inconceivable that the "use" of the excavator to lift the trailer was a risk that Mountain Laurel could have anticipated and intended to insure as a covered "use." *State Farm Mut. Auto. Ins. Co. v. Nolen*, 857 S.W.2d 37, 41 (Tenn. Ct. App. 1993) (policy language must be construed against the nature of the risk involved). Accordingly, the Court finds that the accident at issue did not arise from a covered "use" of an insured auto.

### 2. The Loading or Unloading Exclusion

As noted above, the Policy contains the following exclusion from coverage:

> 10. Bodily injury or property damage resulting from or caused by the loading or unloading of property with any device other than a hand truck.

[Policy at p. 13.] Mountain Laurel argues that this exclusion applies and therefore also provides a basis to declare that there is no coverage for the accident at issue. In support of this argument, Mountain Laurel points to Bentley's initial answer in which he admits that his injury resulted from the loading or unloading of property with a device other than a hand truck. [Doc. 9 at ¶ 2, Doc. 1 at ¶ 30.] Bentley has now been permitted to amend his answer twice and denies that his injuries occurred during the loading or unloading process. [*See* Doc. 46 at ¶ 3.] In any event, it appears that Mountain Laurel concedes that the unloading process was complete [*see* Doc. 27 at n.2] and that appears to be consistent with the parties' stipulated version of the facts. Thus, because the excavator had been unloaded from the trailer at the time of the accident, the Court finds that this exclusion does not apply and would not exclude coverage.

10

### 3. The Use of Mobile Equipment Exclusion

The use of mobile equipment exclusion states as follows:

> 23. Bodily injury or property damage caused by or through the ownership, use or operation of any mobile equipment or other apparatus attached to or pulled by your insured auto except while your insured auto is in transit on a public roadway.

[Policy at p. 16.] As noted above, Bentley admits that the excavator constitutes "mobile equipment" as defined by the Policy [*see* Doc. 33 at p. 9]. Additionally, Bentley has also admitted that Pike was using the excavator at the time of the accident [Doc. 46 at ¶ 4]. Thus, Mountain Laurel argues that Bentley's injuries are not covered pursuant to this exclusion because they occurred as a result of the use of the excavator while it was attached by chain to the trailer.

Bentley argues vigorously that the excavator was not "attached to" the trailer because it was not secured to or upon the trailer. Bentley suggests that the term "attached," which is not defined by the Policy, does not include "an incidental touching or transient connection." [Doc. 33 at p. 10.] Alternatively, Bentley argues that the phrase "attached to" is ambiguous and thus must be construed in favor of coverage.

While Bentley has presented a valiant argument, the Court must view the Policy language as it is written and interpret the terms of the Policy according to their ordinary meaning. *National Ins. Ass'n v. Simpson*, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004). By its plain terms, exclusion 23 applies to bodily injury caused by the use of mobile equipment "attached to" an insured auto. As stipulated, the excavator was chained to the trailer in an attempt to lift the trailer and re-attach it to the tractor. That connection surely falls within the

11

meaning of the phrase "attached to" and the Court can find no basis in the Policy language to conclude otherwise. Thus, the Court finds that, even if the accident occurred from a covered "use" of the trailer, exclusion 23 applies and excludes from coverage any claim for bodily injury by Bentley.

For these reasons, the Court finds that Mountain Laurel's motion for summary judgment should be granted and Bentley's motion for summary judgment should be denied.

### V.  Mountain Laurel's Motion for Default Judgment

Pursuant to Fed. R. Civ. P. 55(b)(2), Mountain Laurel moved for default judgment against defendants Black Hawk, Barnett, and Pike after default was entered and they failed to appear or otherwise defend this case. [Doc. 23.] In light of the Court's rulings on the motions for summary judgment, it appears that plaintiff's motion for default judgment is now moot and should be denied.

### VI.  Conclusion

For the reasons set forth above, the Court finds that Mountain Laurel is not obligated to defend or indemnify any claim arising from the July 31, 2003 accident because the accident was not the result of a covered "use" of an insured auto and because Bentley's injuries were caused by the use of mobile equipment attached to an insured auto, a scenario which is specifically excluded from coverage. The Court takes no pleasure in reaching these conclusions as it appears, based on the present record, that Bentley was the unfortunate

victim of Pike's poor judgment. Nevertheless, the Court is obligated to interpret the terms of the Policy according to their plain, reasonable meaning and in light of controlling law.

Mountain Laurel's motion for summary judgment will be granted and Bentley's motion for summary judgment will be denied. Mountain Laurel's motion for default judgment will be denied as moot.

Order accordingly.

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE